JOCELYN BURTON, SBN 135879
SCOTT NAKAMA, SBN 296732
**BURTON EMPLOYMENT LAW**
1939 Harrison Street, Suite 400
Oakland, CA 94612
Ph: (510) 350-7025
Fax: (510) 473-3672
jburton@burtonemploymentlaw.com
snakama@burtonemploymentlaw.com

Attorneys for Plaintiffs JESUS SARMIENTO
and JUAN CHAVEZ

UNITED STATES DISTICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS SARMIENTO and JUAN CHAVEZ, on behalf of themselves and all others similarly situated and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>SEALY, INC. and SEALY MATTRESS MANUFACTURING COMPANY, LLC.,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION<br><br>COMPLAINT<br><br>1. VIOLATION OF LABOR CODE § 510 (FAILURE TO PAY OVERTIME- PAGA)<br>2. VIOLATION OF LABOR CODE § 223 (PAYMENT OF SECRET WAGE- PAGA)<br>3. VIOLATION OF LABOR CODE § 222 (WITHHOLDING OF WAGES - PAGA)<br>4. VIOLATION OF LABOR CODE §§ 201, 202, AND 203 (FAILURE TO PAY ALL WAGES DUE UPON TERMINATION - PAGA)<br>5. VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200 ET SEQ.<br>6. VIOLATION OF LABOR CODE § 226(a) (NONCOMPLIANT WAGE STATEMENTS- PAGA)<br>7. VIOLATION OF LABOR CODE § 923 (RETALIATION FOR ENGAGING IN CONCERTED ACTIVITY<br>8. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br><br>**JURY TRIAL DEMANDED** |

1

2 _____)
   _____)

3

4        Plaintiffs JESUS SARMIENTO ("Sarmiento") and JUAN CHAVEZ ("Chavez"), collectively

5 ("Plaintiffs"), bring this Class Action Complaint against (1) SEALY, INC. ("Sealy, Inc."), and 2)

6 SEALY MATTRESS MANUFACTURING COMPANY, LLC. ("Sealy Mattress"), collectively

7 ("Defendants") for violations of the California Labor Code, California Business and Professions

8 Code, and common law wrongful termination in violation of public policy.

9                                    **PARTIES**

10      1.      Plaintiff Sarmiento was at all times relevant herein a resident of San Pablo, California

11 and an "employee" as defined by the Labor Code and applicable Wage Order(s) of the Industrial

12 Welfare Commission ("IWC").

13

14      2.      Plaintiff Chavez was at all times relevant herein a resident of San Pablo, California

15 and an "employee" as defined by the Labor Code and applicable Wage Order(s) of the Industrial

16 Welfare Commission ("IWC").

17

18      3.      Defendant Sealy, Inc. is an Ohio Corporation with its principal office in Trinity, NC

19 and is an "employer" as defined by the Labor Code and applicable IWC Wage Order(s).   Defendant

20 Sealy, Inc. manufactures and sells mattresses.

21      4.      Defendant Sealy Mattress is a Delaware Limited Liability Corporation with its

22 principal office in Lexington, Kentucky and is an "employer" as defined by the Labor Code and

23 applicable IWC Wage Order(s).   Plaintiffs are informed and believes that Defendant Sealy Mattress

24 manufactures mattresses.

25

26

27

28

**JURISDICTION**

5.      This Court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), since 1) Plaintiffs are California citizens and Defendants are citizens of different states, 2) there are more than 100 putative plaintiff class members and 3) the amount in controversy exceeds $5,000,000.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Contra Costa County, California.

**GENERAL ALLEGATIONS**

7.      At all relevant times, Plaintiffs and Class Members were non-exempt employees of Defendant

8.      Plaintiff Sarmiento was employed by Defendants from approximately July 2015 until May 26, 2017 at their mattress manufacturing facility in Richmond, California.  While he was employed by Defendants, Sarmiento worked concurrently as a loader, taper or sewer with different responsibilities and each job was paid at a different hourly rate.  Pursuant to Defendants' contract with Plaintiffs' union, Plaintiffs' hourly rate varied with the position Plaintiffs were assigned when they worked.  When Sarmiento worked as a loader, he was responsible for loading mattresses into vehicle.   At the end of his employment, Sarmiento was paid an hourly rate of $17.55 when he performed duties as a loader.  As a taper or a sewer, Sarmiento was responsible for using a tape edge machine to sew edges around mattresses.  At the end of his employment, Sarmiento was paid an hourly rate of $19.10 when he worked as a taper or a sewer.  Defendants failed to pay Sarimento and other putative class members the higher hourly rates when required when they worked at positions that dictated a higher hourly rate.

9.      Chavez was employed by Defendants from approximately December 2014 until May 5, 2017 and from approximately May 12, 2017 until June 7, 2017 at their manufacturing facility in Richmond, California.  During his employment with Defendants, Chavez worked as a line feeder and he earned an hourly rate of $17.55 an hour at the end of his employment.

10.     During their employment, Plaintiffs worked shifts that exceeded twelve hours a day. Defendants failed to pay and other putative class members and aggrieved employees overtime time pay at twice their regular hourly rate when they worked more than twelve hours a day.

11.     During their employment, since Defendants often paid Plaintiffs and other putative class members and aggrieved employees at a lower regularly overtime rate than which they were entitled, Defendants also paid them less overtime than was required when they worked over 8 hours a day and forty hours a week.

12.     During their employment, Plaintiffs and other putative class members and aggrieved received wage statements that listed the name and address of their employer as Sealy Inc, 1 Office Parkway Road, Trinity, NC 27370-9449.  Plaintiffs are informed and believe, however, that the correct name and address of their employer was Sealy Mattress Manufacturing Company, LLC, 1000 Tempur Way, Lexington, KY 40511.

13.     During their employment, Sarmiento and other putative class members and aggrieved employees received wage statements from Defendants that did not state the correct 1) hourly rate of pay, 2) gross wages earned,  and 3) net wages earned.

14.     On or about about May 26, 2017, the management officials  Defendants' Richmond, CA plant held a town hall meeting of the Richmond, CA plant employees.  Bernie Reyes, Senior Human Resources Business Partner, and Patricia Gallardo, Director of Manufacturing Operations, informed the employees that they had implemented a points systems as of May 1, 2017 whereby

employees would be terminated if they received 16 points for various infractions.  As Bernie Reyes was explaining the point system, he made a rude sexual gesture to explain that the emloyees would be terminated once they received 16 points.

15.     As the meeting was breaking up, Chavez asked Bernie Reyes that since the new points system went into effect on May 1, 2017, why did management wait until May 26, 2017 to tell them about the new system.   In response, Bernie Reyes told the assembled crowd of the number of points that Chavez had accrued and told Chavez and the assembled crowd that if they went back to the old point system, it was guaranteed that Chavez would have been terminated.  Chavez asked Bernie Reyes what was up with Reyes doing rude sexual gestures that were unprofessional and disrespectful. Reyes became hysterical and started yelling that Chavez was pointing at thim and threatening him. Sarimento stepped between Reyes and Chavez and told Reyes that he needed to calm down, no one was threatening him and that he needed to relax.  Reyes became manic and attempted to aggravate Chavez, who ignored Reyes.  Sarmiento slightly touched Reyes's shirt and Reyes began shouting "did you just touch me?, you know I can press charges for that!"  Sarmiento told Reyes that if he wanted people to listen to him and work with him, he needed to show themsome respect and then he might get some back.  As Sarmiento was leaving for lunch, Patricia Gallardo told Sarmiento that she hoped that he felt ok. Sarmiento responded that he did not feel ok, how could he feel ok.  Sarmiento then pointed to Reyes and told Gallardo "[t]hat's our new HR?  I feel completely uncomfortable working here anymore."  In response Gallardo asked Sarmiento "[s]o why don't you just quit?" Sarmiento then responded: "I am looking around but I don't have the privilege to just quit. I have bills to pay. I don't get things handed to me and I need to work hard for them. And you know what, if the company don't want to help and the union ain't helping us either, then I'm going to look for

someone that will because I don't feel safe or comfortable here and if they need to investigate this place, so be it."

16.    After the May 26, 2017 encounter with Gallardo and Reyes, Sarmiento went to lunch. As he was returning to work, Sarmiento became ill and vomited in his co-worker's car.  Sarmiento told his co-worker Lamar Hill that he was ill and that he needed to go home.   Sarmiento asked Lamar Hill to inform Sarmiento's supervisor, Juan Iniguez that Sarmiento had an emergency and had to go home.  At approximately 12:36 pm, Sarmiento attempted to call Juan Iniquez to explain what had happened at lunch. Iniguez did not answer the phone and Sarmiento left a message.  Sarmiento then left a message for his union representative, Ulises Vergara.  At 2:04 pm, Sarmiento called Iniguez again, but Iniguez did not answer the phone.  At 2:09 pm, Sarmiento received a call from Gallardo. Gallardo informed Sarmiento that he had been terminated. When Sarmiento inquired as to the reason for the termination, Gallardo responded that Sarmiento had been terminated for job abandonment.

17.    Even though Sarmiento was terminated on May 26, 2017, he did not receive his final pay check until after June 2, 2017.  Moreover, the final wage statement that Sarmiento received from Defendants failed to state:  1) the name and addrss of his employer, or 2) his regular or overtime rates of pay.   Since Defendants failed to pay Plaintiffs, putative class members and aggrieved employees all wages due to them, Defendants are liable for waiting time penalties pursuant to Labor Code § 203.

18.    After the May 26, 2017, town hall meeting, Chavez was placed on administrative leave.  On  or about June 7, 2017, Defendants terminated Chavez's employment.  Chavez did not receive his final wages until approximately June 16, 2017.

///

## PRIVATE ATTORNEYS GENERAL ACT ALLEGATIONS

19.     The Labor Code Private Attorneys General Act of 2004 ("PAGA"), as set forth in Labor Code section 2698 et seq., applies to Plaintiffs' employment with Defendants.

20.     Under Labor Code section 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees under the procedures outlined in Labor Code section 2699.3.

21.     Plaintiffs were employed by Defendants, and the alleged violations were committed against them in relation to their employment.  Plaintiffs are aggrieved employees as defined by Labor Code section 2699(c).  Other employees, current and former, are also aggrieved employees in that one or more of the alleged violations were committed against them during their employment with Defendants from the period between one year before filing this complaint and date of final judgment.

22.     Under Labor Code section 2699(g), aggrieved employees may recover the civil penalty on behalf of themselves and other current or former employees against whom one or more of the alleged violations was committed.  Any employee who prevails in any such action will be entitled to an award of reasonable attorney's fees and costs.

23.     Under Labor Code section 2699.3, an aggrieved employee may pursue a civil action under PAGA after these requirements have been met:

 a.  The aggrieved employee or representative gave online notice to the LWDA and gave notice by certified mail to the employer ("Employee's Notice") of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations;

 b.  The aggrieved employee paid a filing fee of $75 to the LWDA; and

c.  If the alleged violation(s) is not cured within 65 calendar days of the postmark date of the notice sent by the aggrieved employee or representative, the employee may commence a civil action pursuant to Section 2699.

24.    On August 23, 2017, Sarmiento provided online notice to the LWDA and notice by certified mail to Defendant Sealy, Inc. of specific provisions of the Labor Code alleged to have been violated by Defendants, including the facts and theories to support the alleged violations.

25.    Sarmiento paid the $75 filing fee to the LWDA.

26.    On or about December 4, 2017, Sarmiento provided online notice to the LWDA and notice by certified mail to Defendants of his amended claims of the specific provisions of the Labor Code alleged to have been violated by Defendants, including the facts and theories to support the alleged violations.

27.    The LWDA has not provided Sarmiento with written notice that it intends to investigate the alleged violations of the Labor Code.  Accordingly, Sarmiento has satisified the administrative prerequistes under Labor Code § 2699.3 to bring a civil action to recover civil penalties under the PAGA, in addition to other remedies.

28.    On December 26, 2017, Chavez provided online notice to the LWDA and notice by certified mail to Defendants of specific provisions of the Labor Code alleged to have been violated by Defendants, including the facts and theories to support the alleged violations.

29.    Chavez paid the $75 filing fee to the LWDA.

30.    The LWDA has not provided Chavez with written notice that it intends to investigate the alleged violations of the Labor Code. Accordingly, Chavez has satisfied the administrative prerequistes under Labor Code § 2699.3 to bring a civil action to recover civil penalties under PAGA, in addition, to other remedies.

31.     Under Labor Code § 2699.3(d), the time to commence a civil action to recover penalties under the PAGA is tolled during the 65-day exhaustion period.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs sue, on behalf of themselves and all others similarly situated, as a class action under Federal Rule of Civil Procedure 23.  The class which Plaintiffs seek to represent is:

All employees of Defendants in the State of California within four years preceding filing the complaint to the time of final judgment.

33.      Within the foregoing class, Plaintiffs seeks to ascertain and represent the following four subclasses:

a.     All nonexempt employees of Defendants within four years preceding the filing of the complaint until final judgment;

b.     All nonexempt employees of Defendants who concurrently worked at two or more positions for Defendants with differently hourly rates of pay under the union contract within the four years preceding the filing of this complaint until final judgment; and

c.     All nonexempt employee who worked more than 12 hours a day within the four years preceding the filing of this complaint until final judgment; and

d.     All employees who were terminated from their employment with Defendants and all employees who resigned from their employment with Defendants within four years preceding the filing of this complaint until final judgment.

34.     The class of persons within the State of California is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action is a benefit to the parties and to the Court.  Plaintiffs are informed and believe, and based thereon allege, that Defendants employ and employed in California no less than 500 persons who satisfy the class

definition.  Although the exact number and identity of these putative class members is not known, they can be identified in Defendants' records through coordinated discovery under this class action.

35.    This action may be maintained as a class under Federal Rule of Civil Procedure 23 because the questions of law and fact which are common to class members predominate over questions affecting only individual members and because a class action is superior to other available methods for adjudicating the controversy.

36.    There are numerous common questions of law and fact arising out of Defendants' conduct.

37.    Common questions of law and fact predominate over questions affecting only individual members of the class.  The predominating common or class-wide questions of law and fact include:

a.    Whether Defendants' failure to pay wages, without abatement or reduction, under the California Labor Code, was willful;

b.    Whether Defendants failed to pay Plaintiffs and Class members overtime as required by Labor Code § 510.

c.    Whether Defendants failed to pay Plaintiffs and Class Members all the wages due them in violation of Labor Code § 223, 1194 and 1194.2;

d.    Whether Defendants failed to pay all wages earned by Plaintiffs and Class Members owed upon their discharge or resignation in violation of California Labor Code Sections 201-203; and

e.    Whether Plaintiffs and Class Members received inaccurate pay statements from their employer.

38.     Plaintiffs' claims are typical of the claims of the members of the class all of whom have sustained and/or will sustain damage and injury as a proximate and/or legal result of Defendants' violations of Labor Code sections 201-203, 223, 226(a), 510, 1194, 1194.2, the applicable wage order, and Business and Profession Code Section 17200 *et seq*.  Plaintiffs' claims are typical of those of the class because Defendants subjected Plaintiffs and each member of the class to the same Labor Code and Business and Profession Code violations alleged.

39.     The defenses of Defendants, if such defenses apply, are applicable to the whole class and are not distinguishable as to the proposed class members.

40.     Plaintiffs will fairly and adequately protect the interests of all members of the class, and has retained attorneys with extensive experience in employment litigation, including class and other representative actions.  Plaintiffs have no interests that conflict with those of the class. Plaintiffs can fairly and adequately protect the interests of all members of the class because it is in her best interest to prosecute the claims alleged to obtain the full compensation due to them.

41.     A class action is superior to any other method available for fairly and efficiently adjudicating the controversy because:

a.      Joinder of individual class members is not practical;

b.      Litigating the claims of individual class members is unnecessarily costly and burdensome and deters individual claims;

c.      Litigating the claims of individual class member creates a risk of inconsistent or varying adjudications that will establish incompatible standards of conduct for Defendants;

d.      Class members still working for Defendants may fear retaliation if they bring individual claims;

e.    Class members will be discouraged from pursuing individual claims because the

      damages available to them are relatively small; and

f.    Public policy encourages the use of class actions to enforce employment laws

      and protect individuals who, by their subordinate position, are vulnerable.

42.    Judicial economy will be served by maintenance of this lawsuit as a class action.  To process numerous, virtually identical, individual cases will significantly increase the expense on the Court, the class members and Defendants, all while unnecessarily delaying the resolution of this matter.  There are no obstacles to effective and efficient management by this Court of this lawsuit as a class action, and doing so will provide multiple benefits to the litigating parties including, but not limited to, efficiency, economy, and uniform adjudication with consistent results.

43.    Notice of a certified class action and any result or resolution of the litigation can be provided to class members by mail, e-mail, publication, or such other methods of notice as deemed appropriate by the Court.

**FIRST CAUSE OF ACTION**
**(Violation of Labor Code § 510)**
**(Failure to Pay Overtime-Class and PAGA)**
**Against Defendants**

44.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43 above as though fully set forth.

45.    Pursuant to Labor Code section 510, "[e]ight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.   In addition, any work in excess of eight hours on

any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

46.    During the relevant time period, Defendants failed to pay Plaintiffs and other putative class members and aggrieved employees the overtime wages due and owing.

47.    Plaintiffs, putative class members and aggrieved employees have been harmed by Defendants failure pay them overtime that was due to them.

48.    Labor Code § 1194(a) provides:

> (a)  Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

49.    Plaintiffs and putative class members have been injured and request relief.  Plaintiffs also requests the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of themselves and, as a proxy for the LWDA, on behalf of Defendants' other current and former employees.

## SECOND CAUSE OF ACTION
### (Violation of Labor Code § 223)
### (Payment of Secret Rate – PAGA and Class Claims)
### Against Defendants

50.    Plaintiffs reallege and incorporate by refence Paragraphs 1 through 43 above as though fully set forth.

51.    Pursuant to Labor Code § 223, "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or contract."

52.   Pursuant to the collective bargaining agreement between Defendants and Communication Workers of America, employees received varied hourly rates based on their job assignments.

53.   Defendants failed to pay Plaintiffs and other class members a higher hourly rate of pay when they performed tasked that dictated a higher hourly rate of pay as required by the collective bargaining agreement.

54.   Plaintiffs and the other class members have been harmed by Defendants breach of the collective bargaining agreement.

55.   Labor Code § 218.5 provides that in any action for nonpayment of wages, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.

56.   Plaintiffs requests back wages for themselves and the other putative class members, attorney's fees under Labor Code § 218.5 and they request the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of themselves and, as a proxy for the LWDA, on behalf of Defendants' other current and former employees.

<u>**THIRD CAUSE OF ACTION**</u>
**VIOLATION OF LABOR CODE §222**
**(Withholding of Wages- PAGA and CLASS)**
**Against All Defendants**

57.   Plaintiffs reallege and incorporate by refence Paragraphs 1 through 43 above as though fully set forth.

58.   Pursuant to Labor Code § 222 "[i]t shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon."

59.     Pursuant to the collective bargaining agreement between Defendants and Communication Workers of America nd SEIU United Service Workers West, employees were to received varied hourly rates based on their job assignments.

60.     Defendants failed to pay Plaintiffs and other class members a higher hourly rate of pay when they worked in job assignments that dictated a higher hourly rate in the collective bargaining agreement.

61.     Plaintiffs and the other class members have been harmed by Defendants breach of the collective bargaining agreement and seek damages and attorney's fees pursuant to Labor Code § 218.5.

62.     Plaintiffs requests the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of herself and, as a proxy for the LWDA, on behalf of Defendants' other current and former employees.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE §§ 201, 202**
**(Failure to Pay Wages Upon Termination of Employment – PAGA and Class)**
**(Against All Defendants)**

63.     Plaintiffs hereby reallege and incorporate by reference Paragraphs 1 through 43 above as though fully set forth.

64.     At all times set forth, California Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee voluntarily leaves his or her employment, his or her wages, will become due by seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

65.     During the relevant time period, Defendants willfully failed to pay Plaintiffs and Class Members who are no longer employed by Defendants their wages, earned and unpaid, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

66.     Defendants' failure to pay Plaintiffs and those class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates California Labor Code §§ 201 and 202.

67.     California Labor Code § 203 provides that if an employer willfully fails to pay wages owed, under §§ 201 and 202, then the wages of the employee will continue as a penalty from the due date, at the same rate until paid or until an action is commenced, but wages will not continue for over thirty (30) days.

68.     Plaintiff and class members may recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum under California Labor Code § 203.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**
**(Against All Defendants)**

69.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43 above as though fully set forth.

70.     Defendants' conduct, as alleged, has been, and continues to be, unfair, unlawful, and harmful to Plaintiffs, other class members, and to the general public, Plaintiffs seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure §1021.5.

71.     Defendants' activities, as alleged here, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, et seq.

72.     A violation of California Business & Professions Code §§ 17200 et seq. may be predicated on violating state or federal law.  Defendants' policies and practices of requiring hourly

paid employees, including Plaintiffs and Class Members, to work overtime without paying them proper compensation violate California Labor Code §§ 510 and 1194.  Defendants' violations of the collective bargaining agreement violate California Labor Code §§ 223, 224.   Defendants' failures to provide Plaintiffs and Class Members their final wages in a timely fashion violate California Labor Code §§ 201, 202.  Plaintiffs and Class Members have been injured by Defendants' unlawful business acts and practices as alleged, including but not limited to the loss of money or property.

73.     Under California Business & Professions Code §§ 17200 et seq., Plaintiffs and putative Class Members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to filing this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiffs and Class Members; an award of attorneys' fees under California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE § 226(a)**
**(Failure to Furnish Complete and Accurate Itemized Wage Statements – PAGA and CLASS)**
**(Against Defendants)**

74.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 43 above as though fully set forth.

75.     Under Labor Code section 226(a), "every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when the wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for an employee whose compensation is solely based on salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicableedre of the Industrial Welfare Commission . . . (5) net wages earned… (8) the name and

address of the legal entity that is the employer…. and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

76.     An employee suffering injury as the result of a knowing and intentional failure by an employer to comply with Labor Code section 226(a) may recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed the aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.  Labor Code § 226(e)(1).

77.     An employee is deemed to suffer injury if the employer fails to provide a wage statement or if the employer fails to provide accurate and complete information as required by any one or more items (1) through (9), inclusive, of subdivision (a) of Labor Code section 226 and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:  (i) the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement under items (2) to (4), inclusive, (6), and (9) of subdivision (a); (ii) which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period; (iii) the name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period; and (iv) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.  Labor Code § 226(e)(2)(A), (e)(2)(B)(i)-(iv).  "Promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information.  Labor Code § 226(e)(2)(C).

78.     During the relevant time period(s), Defendants failed to provide accurate and complete itemized wage statements to Plaintiffs and other former and current employees of Defendants, in violation of Labor Code section 226(a).

79.     Wherefore, Plaintiffs and other aggrieved employees have been injured and request damages.  Plaintiffs also request the civil penalties, attorney's fees, and costs recoverable in a civil action brought by an aggrieved employee on behalf of herself and, as a proxy for the LWDA, on behalf of Defendants' other current and former employees.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE SECTION 923**
**(Collective Action Retaliation – Individual Claims)**
**Against All Defendants**

80.     Plaintiffs incorporate the allegations of Paragraphs 1 through 43 above as though fully set forth.

81.     Labor Code § 923 provides that:

> In the interpretation and application of this chapter, the public policy of this State is declared as follows:
>
>   Negotiation of terms and conditions of labor should result from voluntary agreement between employers and employees.  Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment.  Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own chosing to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

82.     At the May 26, 2017 town hall meeting, Plaintiffs engaged in concerted activities to negotiate the terms and conditions of their employment for their mutual aid or protection. As the

83.     Defendants terminated Plaintiffs' employment in retaliation for their concerted activities to negotiate the terms and conditions of their employment.

84.     The acts taken toward Plaintiffs were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner to injure or damage Plaintiffs, thereby justifying an award of punitive damages.

84.     As a direct and proximate of Defendants' conduct, Plaintiffs have suffered damages and requests relief.

**EIGHTH CAUSE OF ACTION**
**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**
**(Against All Defendants)**

85.     Plaintiff incorporates the allegations of Paragraphs 1 through 43 by reference, as though fully set forth.

86.     Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to the case of *Tameny v. Atlantic Richfield Company* (1980) 27 Cal.3d 167 and *Roko v. Liger* (1990) 52 Cal.3d 65.

87.     Under California law, there are fundamental and well-established public policies prohibiting retaliation against employees for engaging in protected activities. Said public policies are embodied in the Constitution of the State of California and in California statutes, particularly California Labor Code § 923.

88.     Plaintiffs were employed by Defendants.

89.     Defendants discharged Plaintiffs.

90.     Plaintiffs' concerted activities were substantial motivating reasons for Defendants' decision to discharge Plaintiffs.

91.     Because of Defendants' wrongful termination in violation of public policy, Plaintiffs have suffered and continue to suffer economic and emotional distress damages.

92.     In doing the acts herein alleged, Defendants acted with oppression, fraud, malice and in conscious disregard of Plaintiffs' rights and Plaintiffs are therefore entitled to punitive damages in an amount according to proof at trial.

WHEREFORE, Plaintiffs pray for relief and judgment as hereinafter set forth.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintifs pray judgment against Defendants and each of them as follows:

1.     This Court certify the class identified in Paragraph 32;

2.     This Court certify the subclasses identified in Paragraph 33;

3.     This Court certify Plaintiffs as the representatives of the classes identified in Paragraphs 32 and 33;

4.     This Court appoint counsel for as Class Counsel;

5.     Damages for unpaid minimum wages under Labor Code §§ 510, 1194;

6.     Damages for unpaid wages under Labor Code §§ 222, 223;

7.     Damages for non-compliant wage statements under Labor Code § 226(e);

8.     Damages for unpaid penalty wages under Labor Code §§ 201-203;

9.     Restitution under Business & Professions Code §§ 17203;

10.    Punitive damages;

11.    Economic and noneconomic damages;

12.     Pre-judgment interest;

13.      Costs under Labor Code §§ 218.5, 2699, 1194;

14.     Attorneys' fees under Labor Code §§ 218.5, 226, 1194 and 2699;

15.     Civil and statutory penalties under Labor Code §§ 226.3, 558, 1197.1, 2699(a), 2699(g); and

16.     This Court award such other and further relief as the Court deems just and proper.


Dated:  March 31, 2018                                    BURTON EMPLOYMENT LAW


                                                By:   //ss// Jocelyn Burton //ss//
                                                        JOCELYN BURTON
                                                        Attorney for Plaintiffs
                                                        JESUS SARMIENTO and JUAN
                                                        CHAVEZ