UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESUS SARMIENTO, et al.,

        Plaintiffs,

   v.

SEALY, INC., et al.,

        Defendants.

Case No. 18-cv-01990-JST

**ORDER RE: MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Re: ECF No. 33

Before the Court is Defendants Sealy, Inc. and Sealy Mattress Manufacturing Company, LLC's (collectively, "Sealy") motion for judgment on the pleadings on several of Plaintiffs' claims. ECF No. 33. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

### A.    Factual Background

As alleged in their complaint, Plaintiffs Jesus Sarmiento and Juan Chavez are former employees of Sealy's mattress manufacturing facility in Richmond, California. ECF No. 1 ("Compl.") ¶¶ 8-9. Sarmiento "worked concurrently as a loader, taper or sewer" during his employment. *Id.* ¶ 8. Pursuant to the collective bargaining agreement ("CBA"), Sarmiento was entitled to a different hourly rate for each job. *Id.* Plaintiffs allege that Sealy did not "pay Sarmiento and other putative class members the higher hourly rates when required." *Id.*

Plaintiffs further allege that they regularly worked shifts exceeding twelve hours a day without receiving the proper overtime rate, and that Sealy furnished wage statements that omitted required information. *Id.* ¶¶ 10-13.

Finally, Plaintiffs allege that an incident occurred at the facility on May 26, 2017, when two Sealy management officials introduced a new points-based disciplinary system. *Id.* ¶ 14.

After the system was introduced, Chavez asked management why they had not informed employees of the new system, given that it had already gone into effect on May 1, 2017. *Id.* ¶ 15. The confrontation escalated into shouting, and when Sarmiento attempted to intervene, one of the management officials threatened him as well. *Id.* After the employees dispersed for lunch, Sarmiento became ill and decided that he need to go home. *Id.* ¶ 16. Although Sarmiento communicated this reason to a co-worker, he was unable to get in touch with either his supervisor or his union representative. *Id.* Within two hours, Sarmiento received a call informing him that he had been terminated for job abandonment. *Id.* Sarmiento did not receive his final paycheck until June 2, 2017. *Id.* ¶ 17.

Chavez was placed on administrative leave after the May 26, 2017 town hall meeting. *Id.* ¶ 18. He was terminated on June 7, 2017, but he did not receive his final paycheck until June 16, 2017. *Id.* ¶ 18.

### B. Procedural History

On March 31, 2018, Plaintiffs filed this putative class action against Sealy. *See id.* Plaintiffs allege six claims on behalf of the class: that Sealy (1) failed to pay overtime wages, Cal. Lab. Code § 510; (2) secretly paid lower wages than provided for in the CBA, *id.* § 223; (3) withheld wages due under the CBA, *id.* § 222; (4) failed to promptly pay wages due upon termination, *id.* §§ 201, 202; (5) as a result of these violations, violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (6) failed to furnish complete and accurate wage statements, Cal. Lab. Code § 226(a). Plaintiffs also allege derivative claims under the Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698-99.5, based on the first through fourth and sixth claims. Further, Plaintiffs allege two individual claims for wrongful termination: (7) unlawful retaliation based on California Labor Code section 923; and (8) common-law wrongful termination in violation of public policy. Sealy answered the complaint on July 10, 2018. ECF No. 18.

On November 13, 2018, Sealy filed this motion for judgment on the pleadings on Plaintiffs' second, third, seventh, and eighth claims. ECF No. 31. Sealy contends that these claims are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and

2

the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157-58. ECF No. 31 at 8.

## II.  JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## III.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(c)

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). Under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)). A plaintiff must allege facts that are enough to raise his right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999) (citation omitted). "Finally, although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend, and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).

### B.  LMRA Section 301 Preemption

LMRA section 301 provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Section 301 encapsulates "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (footnote omitted). "This federal common law, in turn, preempts the use of state contract law in CBA interpretation and enforcement." *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132 (9th Cir. 2016) (internal citation and quotation marks omitted).

To give "the policies that animate § 301 . . . their proper range," its preemptive force "extend[s] beyond suits alleging contract violations" to include "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Lueck*, 471 U.S. 210-11. Despite the strong preemptive force of section 301, however, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [it]." *Id.* at 211. "[T]he Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a 'mighty oak' that might supply cover to employers from all substantive aspects of state law." *Humble v. Boeing Co.*, 305 F.3d 1004, 1007 (9th Cir. 2002) (citing *Lingle v. Norge Div. of Magic Chef Inc.*, 486 U.S. 399, 408-09 (1988); *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)). "In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 212 (footnote omitted).

"The demarcation between preempted claims and those that survive § 301's reach is not . . . a line that lends itself to analytical precision." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc). The Ninth Circuit has articulated a two-prong inquiry to analyze whether section 301 preemption applies. *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007). A court must first determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and [the court's] analysis ends there." *Id.* at 1059 (citation omitted). However, if the court determines the right underlying the state claim(s) "exists independently of the CBA" the court then proceeds to the second prong, which examines whether the right is "substantially dependent on analysis of a collective bargaining agreement." *Id.* (internal quotation marks and citation omitted).

In determining if the first prong is met (whether a right is independent of a CBA) a court must evaluate whether the "legal character of a claim" is "independent of rights under the

collective bargaining agreement." *Livadas*, 512 U.S. at 123 (internal citation and quotation marks omitted). Section 301 preempts the claim if it is "founded directly on rights created by collective bargaining agreements . . . ." *Caterpillar v. Williams*, 482 U.S. 386, 394 (1987).

In determining whether the second prong is met (whether the claim is "substantially dependent" on a CBA) the Court must evaluate whether the claim can be resolved by "'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Burnside*, 491 F.3d at 1060 (internal citations omitted). "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124 (citation omitted). For example, "[a] collective-bargaining agreement may . . . contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled," but that would not mean the claim is preempted. *Lingle*, 486 U.S. at 413 n.12. Additionally, section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123 (footnote omitted); *see also Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1111 (9th Cir. 2000).

### C.    *Garmon* Preemption

"While the NLRA contains no express preemption provision, two categories of state action are implicitly preempted: (1) laws that regulate conduct that is either protected or prohibited by the NLRA (*Garmon* preemption), and (2) laws that regulate in an area Congress intended to leave unregulated or 'controlled by the free play of economic forces' (*Machinists* preemption)." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir. 2018) (quoting *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008)). *Garmon* preemption "is intended to preclude state interference with the National Labor Relations Board's [(NLRB)] interpretation and active enforcement of the integrated scheme of regulation established by the NLRA." *Brown*, 554 U.S. at 65 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613 (1986)); *see also San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959). Under *Garmon* preemption, a State may not "regulate activity that the NLRA protects,

prohibits, or arguably protects or prohibits." *Id.* (citation omitted). In other words, "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield" to the NLRB's primary jurisdiction. *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 801 F.3d 950, 956 (9th Cir. 2015) (alterations in original) (quoting *Garmon*, 359 U.S. at 244).

The *Garmon* Court also recognized two important limits on the scope of the NLRA's preemptive force. First, "the NLRA did not 'withdraw[ ] from the States [ ] power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act.'" *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 952 (9th Cir. 2014) (quoting *Garmon*, 359 U.S. at 244). Second, *Garmon* preemption does not reach instances "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Id.* (quoting *Garmon*, 359 U.S. at 247).

Finally, "[t]he party claiming preemption bears the burden of demonstrating that the challenged activity is arguably prohibited by the NLRA." *Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1414 (9th Cir. 1991).

## IV. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." On a motion to dismiss, the court may also "consider materials incorporated into the complaint" when "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). This is true even if "the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393

6

F.3d 1068, 1076 (9th Cir. 2005). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, No. 16-CV-06499-DMR, 2017 WL 3136443, at *5 (N.D. Cal. July 24, 2017).

Sealy has attached a copy of the CBA to its motion and requested that the Court take judicial notice. ECF No. 31-1. Plaintiffs argue that the CBA does not meet the standards of Federal Rule of Evidence 201(b) because it has not been properly authenticated. ECF No. 32 at 4.[1]

Courts regularly "take judicial notice of a CBA in evaluating a motion to dismiss." *Hernandez v. Sysco Corp.*, No. 16-CV-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017). In particular, "[c]ourts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption." *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012).

Plaintiffs argue that the CBA's accuracy "*can* reasonably be questioned," ECF No. 32 at 4 (emphasis added), but do not actually dispute that Sealy has provided an authentic copy of the CBA. A party cannot "reasonably . . . question[]" the accuracy of a source, Fed. R. Evid. 201(b)(2), simply by stating that someone *could* do so, particularly when the party is aware of and presumably has access to the document, *see Martinez v. Welk Grp., Inc.*, No. 09 CV 2883 MMA WMC, 2011 WL 90313, at *3 (S.D. Cal. Jan. 11, 2011) (rejecting "attempt to dispute the authenticity of [a document as] unsupported"); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1261 (W.D. Wash. 2011) (reasoning that plaintiff had not "presented any evidence to contradict defendants' representations [as to webpages' authenticity] and d[id] not affirmatively identify any discrepancies between the webpages they saw and those presented by defendants with their motion").

Moreover, the purpose for which Sealy seeks consideration of the CBA is permissible.

---

[1] In Sealy's request for judicial notice, signed by its counsel, it avers that the CBA is a true and correct copy. ECF No. 31-1 at 2 ¶ 1.

United States District Court
Northern District of California

Sealy does not rely on judicial notice to establish facts outside the CBA, in which case Plaintiffs may "reasonabl[y] dispute" whether the CBA actually establishes them. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018); *cf. Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 (9th Cir. 2008) (declining to assume that benefits plan was implemented according to its terms). Rather, Sealy seeks to show only that the CBA says what it says, for the purpose of determining preemption. Accordingly, the Court GRANTS Sealy's motion for judicial notice.

Alternatively, consideration of the CBA is appropriate under the doctrine of incorporation by reference. The Court "may consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015). Here, Plaintiffs' complaint "necessarily relies upon [the CBA] as the source of [Sealy's] duty to" pay particular hourly rates. *Id.*; *see also* Compl. ¶¶ 53, 60. Again, Plaintiffs' bald allegation that the CBA is not authentic does not raise an actual dispute as to the document's authenticity. Further, as explained above, incorporation by reference for Sealy's purposes would not "dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1002. Finally, considering the CBA will further the purpose of the doctrine, by preventing Plaintiffs from omitting the CBA in order to avoid preemption. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (one purpose of doctrine is to "[p]revent [ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based" (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998)).

The Court therefore considers the CBA in evaluating Sealy's arguments.

## V.    DISCUSSION

Sealy argues that Plaintiffs' second, third, seventh, and eighth claims are preempted by Section 301 of the LMRA. ECF No. 31 at 9. Alternatively, Sealy contends, Plaintiffs' seventh and eighth claims are preempted by Sections 7 and 8 of the NLRA. *Id.*

### A. LMRA

#### 1. Second and Third Claims (Wage Claims)

Plaintiffs' second claim alleges that Sealy violated California Labor Code section 223, which requires that, "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract." Compl. ¶ 51 (quoting Cal. Lab. Code § 223). Similarly, Plaintiffs' third claim alleges a violation of California Labor Code section 222, which provides that "[i]t shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either wilfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." Compl. ¶ 58 (quoting Cal. Lab. Code § 222). Both claims are based on the same factual allegations, namely, that "[p]ursuant to the collective bargaining agreement . . . , employees received varied hourly rates based on their job assignments," and that Sealy "failed to pay Plaintiffs and other class members a higher hourly rate of pay when they performed task[s] that dictated a higher hourly rate of pay as required by the collective bargaining agreement." *Id.* ¶¶ 52-53; *see also id.* ¶¶ 59-60 (same).

Sealy asserts that Plaintiffs' claims are expressly based on breaches of the CBA and therefore are preempted under the first *Burnside* prong. Although there is some merit to this argument, the Court ultimately finds it unpersuasive. True, the protections conferred section 222 specifically require a "wage agreement arrived at through collective bargaining," and section 223 applies here only because the CBA is a "contract [that] requires an employer to maintain the designated wage scale." The fact that statutory provisions are contingent upon some predicate right conferred by the CBA is not dispositive, however. In *Alaska Airlines v. Schurke*, the en banc Ninth Circuit applied the *Burnside* test to a "state law right to reschedule vacation leave for family medical purposes," where "the worker's underlying right to vacation leave is covered by a [CBA]." 898 F.3d 904, 913 (9th Cir. 2018) (en banc). The court concluded that this right was independent of the CBA at step one and would not require interpretation of the CBA at step two, even though the plaintiff's "banked vacation days exist[ed] only by virtue of her having earned

them in accordance with a workplace policy incorporated in the CBA." *Id.* at 927.

Nor is it sufficient for prong one that section 222 applies only to workers covered by a CBA. The Supreme Court has cautioned that "a law could cover only unionized workers but remain unpre-empted if no collective-bargaining agreement interpretation was needed to resolve claims brought thereunder." *Lingle*, 486 U.S. at 399 n.7. As the Ninth Circuit has explained, the degree of interpretation must be resolved under the second prong. *See Burnside*, 491 F.3d at 1066 (citing *Lingle*, 486 U.S. at 399 n.7).

The cases that Sealy cites, on the other hand, involve state-law claims that entirely incorporated a breach of contract cause of action. In *Young v. Anthony's Fish Grottos, Inc.*, the plaintiff attempted to bring an individual breach of contract claim for work that was governed by the CBA. 830 F.2d 993, 997 (9th Cir. 1987). Because the CBA was controlling over any individual agreement, by operation of law, the plaintiff's claim was necessarily "effectively a claim for breach of the CBA." *Id.* at 998. *Lueck* involved a state-law claim for breach of the duty of good faith, where the duty derived entirely from the contract, and "the scope of which, crucially, is 'ascertained from a consideration of the contract itself.'" 471 U.S. at 216 (quoting *Hilker v. W. Automobile Ins. Co.*, 235 N.W. 413, 415 (Wis. 1931)). The *Lueck* Court explained that, "[b]ecause the right asserted not only derives from the contract, but is *defined by the contractual obligation of good faith*, any attempt to assess liability here inevitably will involve contract interpretation." *Id.* at 217 (emphasis added). Moreover, a state-law claim may still be independent even if premised on the same factual theory. States may provide remedies that "run parallel to a CBA violation." *Schurke*, 898 F.3d at 921; *see also Lingle*, 486 U.S. at 409-10 ("In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

A closer examination of sections 222 and 223 reveals that they confer protections that do not simply incorporate an employee's right to receive the wages set in a covered CBA. As the California courts have explained, "Labor Code section 221 and related provisions in sections 222

10

through 223 were enacted in 1937 in response to secret deductions or 'kickbacks' that made it appear as if an employer was paying wages in accordance with an applicable contract or statute, whereas, in fact, the employer was paying less."[2] *Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal. App. 4th 1109, 1118 (1995) (citing *Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal. 2d 319, 328 (1962)). "In such cases, the employer nominally pays employees the wage required by a statute or collective bargaining agreement but then secretly deducts amounts or requires employees to pay back a portion of the wages, so that in reality the employees are earning less than was required." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1205 (2008). The California Court of Appeal has observed, moreover, that these statutory provisions are directed at cases where "the underpayment of wages is a secret being kept *from applicable enforcement authorities* – i.e., the Labor Commissioner, the employee's union, or a contracting party – not from the employees themselves, who presumably are well aware of how much they are paid." *Id.* (citations omitted). In *Shalz v. Union School District*, for instance, the court found that the employer had violated section 223 by charging employees an excessive "sham" wage deduction, purportedly for lodging incident to their employment, which had the effect of bringing their effective pay below the designated wage. 58 Cal. App. 2d 599, 604-05 (1943).

Courts have also interpreted sections 221, 222, and 223 to require "that all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005); *see also Quezada v. Con-Way Freight, Inc.*, No. C 09-03670 JSW, 2014 WL 186224, at *2 (N.D. Cal. Jan. 16, 2014). Thus, in *Armenta*, the court held that those sections prohibited the employer from effectively reducing the CBA's wage rate by averaging times where employees were paid CBA wages with intermittent unpaid hours during a workday to fulfill the employer's minimum wage obligations. 135 Cal. App. 4th at 323-24. In short, the California courts have interpreted these sections as directed at conduct beyond just enforcing the terms of the wage scale, including conduct that is consistent with or even authorized by the CBA, but otherwise violates a state wage

---

[2] Labor Code section 221 provides in full: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

policy.[3]

Labor Code section 224 sheds further light on this regulatory scheme. It creates exceptions to the wage deduction prohibitions in sections 221, 222, and 223 for certain categories, such as deductions required by state or federal law, deductions "expressly authorized in writing by the employee" for medical or insurance needs, "other deductions *not amounting to a rebate or deduction from the standard wage* arrived at by collective bargaining or pursuant to wage agreement or statute, or when a deduction to cover health and welfare or pension plan contributions is expressly authorized by a collective bargaining or wage agreement." Cal. Lab. Code § 224 (emphasis added). Taken together, these sections establish conditions on wage deductions that are "independent" of the CBA.

The Court notes that other district courts have taken somewhat divergent approaches in applying LMRA section 301 preemption to Labor Code section 222 and 223 claims. Two courts in this district have addressed only the second *Burnside* prong, finding that the plaintiffs' claims would require the court to interpret, rather than merely look to, the CBA. *See Estrada v. Kaiser Found. Hosps.*, No. C-14-04465 DMR, 2014 WL 7387958, at *6 (N.D. Cal. Dec. 29, 2014), *aff'd*, 678 F. App'x 494 (9th Cir. 2017); *Bernardi v. Amtech/San Francisco Elevator Co.*, No. C 08-01922 WHA, 2008 WL 2345153, at *4-5 (N.D. Cal. June 5, 2008). Another district court found that no inquiry into the CBA would be required under the particular wage deduction theory alleged. *Espinoza v. Nat'l Beef Cal., L.P.*, No. 08-CV-01902HNLS, 2008 WL 6630100, at *4 (S.D. Cal. Dec. 11, 2008). By contrast, one court has held that a section 223 claim was preempted under the first prong, reasoning that the allegations of breach "convert[ed] this cause of action into a claim for the breach of the CBA." *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *4 (N.D. Cal. Aug. 14, 2008). Finally, two other courts have found section 222 and 223 claims preempted under reasoning invoking both prongs. *Mendes v. W.M. Lyles Co.*, No. CIVF07-1265AWI GSA, 2008 WL 171003, at *8 (E.D. Cal. Jan. 18, 2008); *Cornn v. United*

[3] Because the Court's "preemption inquiry is not an inquiry into the merits of a claim," *Schurke*, 898 F.3d at 924, the Court expresses no view as to whether Plaintiffs' claims satisfy the requirements of these statutes.

United States District Court
Northern District of California

*Parcel Serv.*, No. C03-2001 TEH, 2004 WL 2271585, at *1 (N.D. Cal. Oct. 5, 2004). Critically, none of these courts have engaged in any examination of how sections 222 and 223 have been applied in California law. Given the lack of uniformity, and the foregoing discussion, the Court concludes that Plaintiffs' claims are not preempted under the first prong.

The Court therefore turns to the second prong of the *Burnside* test. Here, the parties have not provided the Court with enough information to ascertain whether "there is an active dispute over 'the meaning of contract terms.'" *Schurke*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 124); *see also Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-CV-00123-JST, 2017 WL 3115168, at *5 (N.D. Cal. July 21, 2017) (concluding that prong two was not satisfied where "Defendants' motion fails to identify any particular CBA provision that must be interpreted"). Plaintiffs' complaint states only that Sealy did not pay the appropriate hourly rate for various job assignments. Compl. ¶¶ 8, 53, 60. Sealy theorizes that resolving these claims will require a complex evaluation of the CBA's procedures for determining the appropriate hourly rate, ECF No. 31 at 14-15, but that is not necessarily so. If, for instance, Sealy simply refused to pay any of the higher hourly rates, the Court would need to look to the CBA only to determine the difference between what was paid and what was owed. "Under *Livadas*, this need to consult the CBAs to determine the wage rate to be used in calculating liability cannot, alone, trigger section 301 preemption." *Burnside*, 491 F.3d at 1074. Moreover, at the hearing on this motion, the Court asked Sealy to identify the precise provisions of the CBA that the Court would need to construe and explain why such construction was necessary. Sealy was unable to do so.

Accordingly, the Court concludes that neither Plaintiffs' second and third claims, nor their derivative PAGA claims, are preempted.

### 2. Seventh and Eighth Claims (Wrongful Termination Claims)

Plaintiffs' seventh claim alleges that Sealy terminated them in violation of Labor Code section 923, which establishes a public policy that employees "shall be free from the interference, restraint, or coercion" in, among other things, "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Plaintiffs allege that their actions at the town hall meeting constituted "concerted activities" and that Sealy terminated them in retaliation for those

actions. Compl. ¶¶ 82-83. Plaintiffs' eighth claim asserts a common-law tort claim for wrongful termination in violation of public policy, based upon the same theory of retaliation for concerted activities. *Id.* ¶¶ 86-90 (citing *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 178 (1980)). Though delineated as separate causes of action, they do not appear to be distinct claims under California law. *See Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1047 (9th Cir. 2017) (noting that Labor Code section 923 has been recognized as the basis for a common-law wrongful termination claim); *Gelini v. Tishgart*, 77 Cal. App. 4th 219, 224-27 (1999) (discussing *Tameny* within the context of Labor Code section 923).

### a. Preemption Analysis

Sealy argues that these claims are preempted under the second prong of the *Burnside* test because their resolution would require the Court to interpret the CBA. ECF No. 31 at 16-19. Specifically, Sealy cites section 18.02 of the CBA, which governs Sealy's management authority to, among other things, "make and enforce reasonable shop rules and regulations." ECF No. 31-1. Sealy reasons that whether Plaintiffs were terminated for good cause rather than retaliatory reasons depends on these provisions. ECF No. 31 at 17-18. This analysis appears to run contrary to *Lingle*. There, the district court had concluded that a retaliatory discharge claim was preempted by the need to interpret the CBA "provision prohibiting wrongful discharge or discharge without just cause." *Lingle*, 486 U.S. at 402 (citation omitted). The *Lingle* Court held that the claim was not preempted, explaining that, while an employer "must show that it had a nonretaliatory reason for the discharge, this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement." *Id.* at 407 (citation omitted).

Moreover, the Ninth Circuit has articulated a different set of guideposts for applying section 301 preemption in this context. A wrongful termination in violation of public policy claim under California law "is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." *Young*, 830 F.2d at 1001. For instance, wrongful termination claims are not preempted where they are based on public policies related to health and safety, *see Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863 (9th Cir. 1987), or anti-discrimination, *see Jackson v. S. Cal. Gas*

14

*Co.*, 881 F.2d 638, 644 (9th Cir. 1989). On the other hand, a claim is preempted where "it is not based on any genuine state public policy or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship." *Young*, 830 F.2d at 1002 (citations omitted); *see id.* (opposition to IRS tax audits not protected by public policy); *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1401 (9th Cir. 1985) (general harassment).

Ultimately, the Court need not address the question because regardless of the answer, Plaintiffs' wrongful termination claims are preempted. First, if Plaintiffs' claims are not preempted by section 301, then they are preempted by the NLRA, as explained further below. Second, if Plaintiffs' claims are preempted by section 301, they cannot pursue them for the following reasons.[4]

### b.      Section 301 Claims

The CBA contains a mandatory grievance and arbitration procedure. *See* ECF No. 31-1 at 15-16. Therefore, Plaintiffs generally "cannot succeed in a suit under § 301 to vindicate personal contract-based rights unless the contractual grievance-arbitration procedure is invoked on [their] behalf or on behalf of a group of employees of which [they are] part." *Kobold*, 832 F.3d at 1034; *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987) ("The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."). An employee may nonetheless pursue an unexhausted claim in federal court only by showing also that "the union violated its duty of fair representation by failing to pursue the grievance to arbitration, or pursuing it arbitrarily." *Kobold*, 832 F.3d at 1034. Courts have referred to this procedure as "a hybrid section 301/fair representation claim." *DelCostello v. Int'l Bhd. of*

---

[4] Section 301 provides an exception to *Garmon* preemption "designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement." *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1156 (9th Cir. 2000) (citation omitted). Because courts have concurrent jurisdiction with the NLRB over such claims, the Court need not address *Garmon* preemption if Plaintiffs' claims can be converted into a section 301 claim.

*Teamsters*, 462 U.S. 151, 165 (1983).

Because the Court assumes for the sake of argument that Plaintiffs' claims are preempted by section 301, it likewise assumes that Plaintiffs' claims fall within the scope of the grievance and arbitration procedure.

Sealy contends, without citation to any material properly before the Court, that Plaintiffs have filed grievances related to their terminations. ECF No. 31 at 20 n.7. According to Sealy, Chavez's grievance was settled on December 27, 2017, while Sarmiento's grievance was denied on June 8, 2017. *Id.* Neither Plaintiffs' complaint nor their opposition addresses these allegations.

Regardless, Plaintiffs must plead a breach of the duty of fair representation against the union in order to bring a hybrid section 301/fair representation claim here. *See Carr v. Allied Waste Sys. of Alameda Cty.*, No. C 10-0715 PJH, 2011 WL 4047495, at *4 (N.D. Cal. Sept. 8, 2011), *aff'd*, 516 F. App'x 677 (9th Cir. 2013) ("To plead a 'hybrid' § 301 breach of contract/duty of fair representation claim, the plaintiff must allege not only facts showing that the employer breached the collective bargaining agreement, but also facts showing breach of the duty of fair representation by the union, before alleging that the employer breached the CBA."). Plaintiffs were required to plead this claim within a six-month statute of limitations. *See DelCostello*, 462 U.S. at 172. Whether Plaintiffs would have brought a claim against the union for failing to pursue an initial grievance and arbitration, or for acting arbitrarily in pursuit of those remedies, Plaintiffs have not pleaded this claim within the requisite time.

The Court therefore concludes that Plaintiffs cannot pursue their wrongful termination claims under section 301.

**B.    NLRA**

Sealy also argues that Plaintiffs' seventh and eighth claims are preempted by the NLRA. ECF No. 31 at 21-24. Sealy reasons that Plaintiffs' allegations that they were terminated "in retaliation for their concerted activities to negotiate the terms and conditions of their employment," Compl. ¶ 83; *see also id.* ¶ 90, are based on acts prohibited or arguably prohibited by Sections 7 and 8 of the NLRA. The Court agrees.

As noted above, California Labor Code section 923, on which Plaintiffs' claims are based,

provides that employees "shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." These protections are mirrored in the NLRA. Section 7 of the NLRA gives employees the right to, among other things, "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8, in turn, make it an unfair labor practice for employers "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." *Id.* § 158(a)(1). Section 8 further prohibits an employer's ability to "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." *Id.* § 158(a)(3).

Where the NLRA's provisions are "almost identical" to the state statute at issue, there is a clear case for *Garmon* preemption. *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 192 (1978) (quoting *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (A. F. L.)*, 346 U.S. 485, 488 (1953)); *see also Henry v. Intercontinental Radio, Inc.*, 155 Cal. App. 3d 707, 715 (1984) (noting that plaintiff had properly conceded that section 923 claim was "most susceptible to preemption as it parallels 'counterpart provisions in the NLRA'"). Moreover, "the preemptive effect of *Garmon* cannot be avoided by reference to California 'public policy' violations, such as violations of [Labor Code] Section 923." *Pantazis v. Fior D'Italia, Inc.*, No. C 94-1094-FMS, 1994 WL 519469, at *6 (N.D. Cal. Sept. 20, 1994). Here, Plaintiffs' alleged "[v]iolations of an employee's right to engage in concerted activities are within the exclusive jurisdiction of the NLRB." *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1350 (9th Cir. 1984); *see also Clayton v. Pepsi Cola Bottling Grp.*, No. CIV.A. CV85-5957-WMB, 1987 WL 46230, at *7 (C.D. Cal. Mar. 3, 1987) (holding that wrongful discharge in violation of section 923 claim "must be viewed as essentially identical to an unfair labor practice claim under section 8 of the National Labor Relations Act" and therefore within NLRB's exclusive jurisdiction).

Plaintiffs' succinct opposition relies solely on a Ninth Circuit case, *Paige*, to argue that their claims are not subject to *Garmon* preemption because they did not allege a violation of the

NLRA. 826 F.2d at 862. In *Paige*, defendants argued that plaintiffs' complaints about safety conditions "were engaged in a concerted activity which is protected by the NLRA." *Id.* The *Paige* court rejected this argument, stating that plaintiffs, "as masters of their complaint, did not allege a violation of their rights under the NLRA, but only violations of state statutes and policy. By foregoing their claim based on federal law, [plaintiffs] may choose to plead their action as a state claim." *Id.* (citing *Caterpillar*, 482 U.S. at 394).

On its face, it is difficult to reconcile this reasoning with *Garmon* preemption, which is aimed by its own terms at claims pleaded under state law. *See Garmon*, 359 U.S. at 245 ("When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of *state* interference with national policy is to be averted." (emphasis added)); *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 755 (9th Cir. 1997) ("*Garmon* preemption originates from the Supremacy Clause of the United States Constitution, and . . . this provision is only implicated when a case involves a conflict between a federal and a state law."); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 780 n.6 (9th Cir. 2001) ("*Garmon* preemption, however, refers to the preemption of state law by the NLRA."). Under Plaintiffs' reading, *Paige* is inconsistent with numerous cases finding *Garmon* preemption of asserted state-law claims unaccompanied by allegations of NLRA violations. *See, e.g.*, *Local 926, Int'l Union of Oper. Eng'rs, AFL-CIO v. Jones*, 460 U.S. 669, 674, 683 (1983) (common-law tort claims for interference with contractual relations and breach of contract); *Local No. 207, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Union v. Perko*, 373 U.S. 701, 703, 708 (1963) (common-law tort claim for conspiracy); *Bassette v. Stone Container Corp.*, 25 F.3d 757, 758, 760-61 (9th Cir. 1994) (wrongful discharge alleged under state employment law); *Buscemi*, 736 F.2d at 1349-50 (California law claims for retaliatory discharge, wrongful termination, and intentional infliction of emotional distress). For these reasons, a number of courts have questioned *Paige*'s apparent holding. *Platt v. Jack Cooper Transp., Co.*, 959 F.2d 91, 95 n.7 (8th Cir. 1992) ("[T]o the extent *Paige* holds that plaintiffs may avoid *Garmon* preemption simply by choosing 'to plead their action as a state claim,' we disagree." (quoting *Paige*, 826 F.2d at 862)); *see also Casumpang v.*

*Hawaiian Commercial & Sugar Co.*, No. CIV. 12-00694 ACK-BM, 2014 WL 4322168, at *12 (D. Haw. Aug. 29, 2014) (agreeing "that *Paige* has a questionable 'precedential effect' and is more concerned about 'removal jurisdiction than *Garmon* preemption'" (quoting *Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1085 (E.D. Cal. 2013)); *Rodriguez v. Yellow Cab Coop., Inc.*, 206 Cal. App. 3d 668, 680 (1988) ("*Paige* erroneously suggests that artful pleading will save a cause of action from *Garmon* preemption."). Moreover, no published Ninth Circuit case appears to have embraced this rule. *But see Raya v. Maryatt Indus. Corp.*, 940 F.2d 1535 (9th Cir. 1991) (unpublished).

Despite these critiques, the Court is obligated to follow binding precedent unless clearly irreconcilable with subsequent higher authority. *Siegal v. Gamble*, No. 13-CV-03570-RS, 2016 WL 1085787, at *9 n.2 (N.D. Cal. Mar. 21, 2016); *see also Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Here, *Paige* can be reconciled by reading it, as some district courts have suggested, as a decision about removal jurisdiction. In *Paige*, the action was originally filed in state court, and then removed to federal court. 826 F.2d at 859. The issue before the court was thus whether there was a basis for federal court jurisdiction. *Id.* Because *Garmon* preemption is not an exception to the well-pleaded complaint rule, however, it "is not a basis for removal from state to federal court jurisdiction," and its invocation "does not create a federal question for federal court jurisdiction." *Hayden v. Reickerd*, 957 F.2d 1506, 1512 (9th Cir. 1991). Instead, when an action brought in state court is potentially preempted by *Garmon*, that argument is properly made in the state court. *Id.* The *Paige* court was correct that "*Garmon* analysis is therefore not relevant to this case" because it lacked jurisdiction to apply a *Garmon* analysis to a removed state-law claim. 826 F.2d at 862. By contrast, the *Paige* court went on to analyze section 301 preemption and *Machinists* preemption, both of which are "complete preemption" doctrines that provide exceptions to the well-pleaded complaint rule. *See Retail Prop. Tr.*, 768 F.3d at 948 & n.5. This reading is bolstered by the relevant discussion's lone citation to *Caterpillar*, a case concerning the well-pleaded complaint rule. 482 U.S. at 396.

Read in this light, *Paige*'s reasoning is inapposite here, where the action is originally filed in federal court. *See Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1270 (9th Cir. 1994) (observing

that a federal district court may conduct a *Garmon* analysis "when a party has raised Garmon as a defense to a state-law claim that is properly before the district court (through diversity or supplemental jurisdiction)"). Accordingly, the Court concludes that *Paige* does not save Plaintiffs' claims from *Garmon* preemption.

Finally, contradicting the allegations in their complaint – and the basis for their claims – Plaintiffs' opposition states that they "do not assert any concerted union activities." ECF No. 32 at 9. To the extent that Plaintiffs dispute the legal label attached to the activities alleged in their complaint, the Court is not required to accept these assertions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To the extent that Plaintiffs allege that, as a factual matter, no such activities occurred, the Court does not consider these new allegations as support for the merits of Plaintiffs' argument. Rather, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). But a plaintiff can only cure the complaint's deficiencies "with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). Nor have Plaintiffs explained how they could possibly pursue their section 923 claims without those allegations of concerted activities.

The Court therefore concludes that *Garmon* preemption deprives the Court of jurisdiction over Plaintiffs' seventh and eighth claims.

## CONCLUSION

For the foregoing reasons, the Court grants the motion in part and denies it in part. The Court holds that Plaintiffs' second and third claims, including any derivative PAGA claims, are not preempted by section 301 of the LMRA. The Court also holds that Plaintiffs' seventh and

/ / /

/ / /

/ / /

/ / /

eighth claims are preempted under *Garmon* and cannot proceed in the alternative as section 301

claims.  The seventh and eighth claims are accordingly dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  February 14, 2019



JON S. TIGAR
United States District Judge